## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## JACKSON DIVISION

**JAMES HART STERN**                                                    **PLAINTIFF**

**v.**                                            **CAUSE NO. 3:11-CV-98-CWR-FKB**
                                                                    *consolidated with*
                                                                **NO. 3:11-CV-319**

**CHRISTOPHER B. EPPS;**                                              **DEFENDANTS**
**MARGARET BINGHAM; EDDIE**
**CATES; MR. PACKSTEN; JOHN**
**DOES 1-20; PAXTON PAGE**

## ORDER

Before the Court is the defendants' motion for summary judgment.[1]  Docket No. 22.  The plaintiff has responded, Docket No. 26, the defendants have replied, Docket No. 30, and the matter is ready for review.  The motion will be denied and the stay currently in place in No. 3:11-cv-98 will be lifted.

I.      *Factual and Procedural History*

James Hart Stern suffers from "an extremely sensitive allergic reaction to formaldehyde that is found in smoking, including exposure to environmental smoke through second-hand smoking."  Docket No. 28-1, at 1.  When exposed to second-hand smoke, he experiences "extreme swelling" in his eyes and his vision is damaged.  *Id.*

Between July 2007 and November 2011, Stern was an inmate in the custody of the Mississippi Department of Corrections (MDOC).  *Id.*  Stern claims that he informed MDOC of his condition early in his confinement, and that it was reflected in his agreement to plead guilty to certain criminal charges.  *Id.*  Evidence from MDOC shows that at intake, Stern reported eye problems from the age of 10 onward, including partial blindness, glaucoma, and poor vision.  Docket No. 22-5.  MDOC Chief Medical Officer Dr. Gloria Perry stated that during his incarceration, Stern was "consistently" evaluated, followed, and treated by ophthalmologists.  Docket No. 22-5, at 2.

In 2008, Stern filed a lawsuit in the United States District Court for the Southern District of

---

[1] The defendants' motion was filed in No. 3:11-cv-319 before these suits were consolidated.  Except where otherwise noted, all docket citations are to No. 3:11-cv-319.

Mississippi, Hattiesburg Division, No. 2:08-cv-33, alleging among other things that MDOC and its officials had exposed him to environmental tobacco smoke in deliberate indifference to his medical needs.  Docket No. 22-3, at 2 (Fifth Circuit opinion).  That claim went to trial in April 2010, when a jury found in MDOC's favor.[2]  *Id.* at 3; *see* Docket No. 22-2.  In March 2012, the Fifth Circuit affirmed the verdict.  Docket No. 22-3.  This trial will be referred to as the "Hattiesburg trial."

In November 2010, while the Hattiesburg trial was being appealed, Stern filed a second lawsuit alleging that MDOC's Commissioner had again housed Stern in a smoking environment in deliberate indifference to his medical needs.  Docket No. 1 in No. 3:11-cv-98.  Stern claimed that he spent a total of 94 days in a smoking environment between May and October 2010.  *Id.* at 2.  He sought injunctive relief, compensatory damages, and punitive damages.  *Id.* at 8.

In May 2011, Stern filed a third suit alleging that in retaliation for pursuing his rights via the Hattiesburg trial, senior MDOC officials had once again housed him in a smoking environment.  Docket No. 1, at 2-3.  This time, he claimed that he was housed in a smoking environment in March 2011.  *Id.* at 4.  (A later affidavit added a period of time in July 2011.  Docket No. 28-1.)  Stern once again sought injunctive relief, compensatory damages, and punitive damages.  Docket No. 1, at 10.

Stern has clarified that his § 1983 claim primarily seeks "appropriate damages for actual injury to Plaintiff by Defendants' repeated exposure of Plaintiff to smoking environments and Defendants' deliberate indifference to Plaintiff's medical needs in violation of his Eighth Amendment rights under the United States Constitution."  Docket No. 26, at 2.  His "alternative[]" theory is a § 1983 claim that "the Defendant State's inaction regarding his medical condition, as well as Defendant State's vindictive invidious discriminatory actions against Plaintiff deprived Plaintiff of his rights under the Equal Protection Clause of the United States Constitution."  *Id.*

In November 2011, Stern was released on parole.  Docket No. 22-6.

In April 2012, the defendants filed the present motion for summary judgment in No. 3:11-cv-319.  Docket No. 22.  Several months later, the Court *sua sponte* consolidated the second and third lawsuits, finding that they involved the same fundamental claims.  Docket No. 31.

---

[2]  Although Stern was unsuccessful, the presiding Judge later described as "undisputed" the evidence "that Mr. Stern has a well-documented eye problem and the medical practitioners unanimously agreed that he should not be exposed to environmental tobacco smoke (ETS).  The Department of Corrections, including the medical staff and officials from the Commissioner on down, are well aware of this requirement and are aware of the significant adverse effects of ETS on Mr. Stern's condition."  Docket No. 281 in No. 2:08-cv-33.

II.     *Present Arguments*

The defendants first argue that Stern's claims are barred by *res judicata* because they could have been, and were, advanced in the Hattiesburg trial.  Docket No. 23, at 5-7.  They then contend that his claims are moot because he has been released from prison.  *Id.* at 7-10.  Finally, the defendants claim that Stern is entitled to nominal damages only, if anything, because there has been no showing of physical injury.  *Id.* at 10-11.[3]

In response, Stern argues that his claims could not have been brought in the Hattiesburg trial, because they are based upon his repeated exposure to smoking environments after April 2010. Docket No. 26, at 4-6.  Second, he asserts that his claims are not moot because he has suffered an injury beyond incarceration.  *Id.* at 6.  Finally, Stern contends that he may seek compensatory and punitive damages because he has suffered physical injuries.  *Id.* at 6-8.

The defendants' reply brief re-urges their *res judicata* argument.  Docket No. 30.

III.    *Standard of Review*

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party seeking to avoid summary judgment must identify admissible evidence in the record showing a fact dispute.  *Id.* at 56(c)(1).  The Court must "view the evidence and draw reasonable inferences in the light most favorable to the non-movant."  *Maddox v. Townsend and Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011) (citation omitted).

IV.     *Discussion*

Each of the defendants' three arguments is meritless.

Stern's claims are not barred by *res judicata* because, as his complaints make clear, they are based on events subsequent to the Hattiesburg trial.  *E.g.*, Docket No. 1, at 2, 4-7, 10.

"Res judicata is appropriate if," among other requirements, "the same claim or cause of action is involved in both suits."  *Ellis v. Amex Life Ins. Co.*, 211 F.3d 935, 937 (5th Cir. 2000) (citation omitted).  The Fifth Circuit applies "a transactional test in determining whether two suits involve the same claim, where the critical issue is whether the plaintiff bases the two actions on the

---

[3]  Arguments concerning Stern's other original claims, such as his claim based on stolen legal papers, are not summarized here because Stern has abandoned them.  *See* Docket Nos. 23, at 2; 26, at 2.

same nucleus of operative facts." *Id.* at 938 (quotation marks and citation omitted).

Our allegations do not involve the "same nucleus of operative facts" as the Hattiesburg trial because they concern a later time period. While Stern cannot relitigate facts that were available to him before the Hattiesburg trial, he may proceed with his claims that MDOC incarcerated him in a smoking environment in deliberate indifference to his medical needs for periods of time between April 2010 and November 2011.

Second, Stern's claims are not entirely moot. Specifically, Stern's demands for injunctive relief are moot because he has been released from prison. Docket No. 1, at 10. His demands for compensatory and punitive damages, though, remain live controversies that may be resolved in this proceeding. *Id.*

Third, Stern is not limited to nominal damages. *See Murphy v. Andrews*, No. 6:10-cv-508, 2011 WL 5878347, *1 (E.D. Tex. Nov. 23, 2011). The defendants' supporting cases all refer to situations where the plaintiff failed to show physical injury. Docket No. 23, at 10. Here, though, Stern has described suffering an "irreversibl[e]" physical injury.[4] Docket Nos. 1; 28-1.

The available evidence reveals a factual dispute about whether Stern was housed in a smoking environment between the conclusion of the Hattiesburg trial and his release from MDOC. For example, a July 2011 letter from attorney John C. Sullivan to Dr. Perry's assistant states that Stern was "once again intentionally moved into an environment that was not smoke-free." Docket No. 26-1. In addition, a July 2011 Order filed in the Hattiesburg case suggests that Stern was housed in a smoking environment at some point in 2011. Docket No. 26-2. The Order also recited that at the Hattiesburg trial, MDOC officials were made "acutely aware of the extreme problem caused to Mr. Stern by exposure to second-hand smoke. Apparently, Mr. Stern has been moved at this time to a smoke-free environment. . . . Mr. Stern should remain in a smoke-free environment."[5] *Id.*

For these reasons, the motion for summary judgment will be denied.

---

[4] The defendants have not disputed Stern's physical injuries or his submitted medical records.

[5] There is also factual conflict within MDOC's evidence. The July 2011 affidavit of Dr. Gloria Perry, for example, states in paragraph nine that "Stern has also been housed in a no smoking building since January 9, 2009." Docket No. 22-5, at 2. At paragraph eleven of the affidavit, however, she states that she has "no personal knowledge of Inmate Stern's housing." *Id.* These paragraphs are directly contradictory, because if Dr. Perry has no personal knowledge of Stern's housing, then she cannot claim that Stern has been housed in a no smoking environment since January 2009.

*V.*      *Conclusion*

The defendants' motion for summary judgment is denied and the stay in No. 3:11-cv-98 is hereby lifted.  Within 10 days, the parties shall contact the Magistrate Judge's chambers to schedule a Case Management Conference or other appropriate status conference.  In light of the filing date of these lawsuits – No. 3:11-cv-98 was filed on November 1, 2010 – any discovery the parties need to conduct should be completed on an accelerated schedule so that this consolidated matter may proceed to trial without delay.

**SO ORDERED**, this the 17th day of October, 2012.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE